## DOWNER *vs.* EGGLESTON.

A *bond debt* may be set off against any demand recoverable under the common counts, or for which an *indebitatus assumpsit* will lie.

A plaintiff cannot, by declaring *specially*, when he may recover his demand
under a *general count*, deprive the defendant of his set-off.

A defendant has a right to insist upon a set off, although he has positively agreed *to account* or *pay over* to the plaintiff monies which the
plaintiff has authorized him to receive as his agent.

ERROR from the supreme court. Eggleston sued Downer in the supreme court, and declared upon a written instrument made by the defendant in *December*, 1829, whereby he acknowledged to have received of the plaintiff a receipt of A. Nelson & Co. for 5032 feet of square hemlock timber, the property of the plaintiff, and *agreed to account* for the timber, if he should dispose of it, to the full amount of the proceeds,

deducting the charges of A. Nelson & Co. for securing the same from high water ; the instrument specifying that the timber should not be sold for less than six cents per cubic foot. The defendant pleaded the general issue, and accompanied the same with a notice that on the trial of the cause he would prove that it was agreed by the plaintiff, that the proceeds of the lumber should be applied towards the payment of a bond which he held against the plaintiff, on which the sum of $500 would become due and payable on the first day of January, 1830, and that the same was accordingly applied. He also gave notice of set off for *money lent,* secured by the same bond. On the trial of the cause, the instrument declared on was produced, and it was proved that the defendant had admitted that he had sold $100 worth of the timber at 7 cents per foot, and the residue at 8 cents per foot, the $100 to be paid in April, 1830, and the price of the residue of the timber to be paid in the summer of 1830. The whole amount, at the above prices, was shown to be $280,32. This suit was not commenced until after July, 1831. Here the plaintiff rested. The defendant offered in evidence the *bond* set forth in his notice, which was objected to as inadmissible as a set-off, as the claim of the plaintiff was *founded on a demand not liquidated, or capable of being ascertained by calculation.* The objection was sustained by the circuit judge, and the defendant excepted. The defendant then proved, by one *Daniel Moyer,* that at the time when the bond set forth in the notice was executed, the plaintiff agreed that when the timber in question was sold, the proceeds thereof should be applied towards payment of the bond. In answer to which, *Darius Eggleston,* the father of the plaintiff, proved a state of facts entirely inconsistent with the testimony of Moyer; and further, that about a month after the bond was executed, the defendant offered to take the receipt of A. Nelson & Co., and to sell the timber ; that he would thus save the plaintiff the trouble of going to Albany, and would not make any charge for doing the business ; whereupon the plaintiff gave him the receipt of A. Nelson & Co., *and took from him the instrument declared on.* The defendant also produced in evidence a note for $150,67, taken by him on the sale of a portion of the timber, bearing date

21st January, 1830, payable 1st September then next. The judge charged the jury that the plaintiff was entitled to recover the value of the timber, inasmuch as there was no evidence that the purchasers were unable to pay, and there had been sufficient time for collection, unless the jury should find that there was an agreement to apply the proceeds upon the bond; and he left that question to them. The defendant excepted to the charge. The jury found a verdict for the plaintiff for $388,28.

The defendant applied to the supreme court for a new trial, which was denied and judgment rendered for the plaintiff for the amount found by the jury. The following opinion was delivered in the supreme court: " By the Court, *Nelson*, J. I am of opinion the judge erred in rejecting the bond offered as a set-off against the plaintiff's demand, on the ground that the damages claimed were unliquidated, and against which there could be no set-off. 2 *R. S.* 354, § 18, *sub.* 5. True, it can be allowed only in actions founded upon demands which could themselves be the subject of set-off, according to law. Was not this such a demand ? By the 3d sub. of the 18th section, it must be a demand for real estate sold, or for personal property sold, &c. ; or, if not, the amount must be liquidated, or be capable of being ascertained by calculation. The defendant having sold the property delivered to him when the receipt was given, by the terms of it was to account to the plaintiff for that sum, deducting the amount payable for dockage ; it was a liquidated demand, to all intents and purposes. But notwithstanding this error, I am of opinion the verdict is right. The defendant undertook to prove that the avails of the timber were to be applied upon the bond by agreement between the parties—and so one witness swore was the understanding. But it was also proved that the defendant had agreed, if Eggleston would secure by bond and mortgage a debt of about $300 due from him, and two other demands due from his father and brother, upon his farm, that he would give up his claim upon the timber, and the plaintiff might apply the avails of it to the payment of his other debts. The bond in question was given under that arrangement. The judge left the question to the jury, whether there was an

agreement to apply the proceeds of the timber upon the bond. They have found there was no such agreement. If the judge had ruled that it was a proper set-off in the case, still the right thus to apply it, must have turned upon the question left to the jury, or one substantially the same. The case ultimately depended upon the testimony of two witnesses, D. Eggleston and D. Moyer. The one swore that the proceeds of the timber were to be applied upon the board; the other testified to an arrangement which contradicted this idea. The course of the business tended to confirm the latter view. The receipt for the timber was taken originally in the name of the defendant, to secure his advances; it was delivered to the plaintiff when the bond was given, and again re-delivered to the defendant for the purpose of selling the timber; and he then gave a receipt, not to apply the proceeds of the timber upon the bond, but to account to the plaintiff for them. About a year and an half had elapsed since the sale, beford this suit was brought, and the defendant had not accounted for the proceeds; the securities, it seems, he took in his own name; and under these circumstances I see no objection to hold him accountable. If a part of the timber had been lost, he should have shown the fact, to have mitigated the amount; and to have exempted himself from being accountable if he had not received the money, he should have delivered over in due time the securities, or shown reasonable diligence in collecting them. New trial denied."

The cause was argued here by

*J. A. Spencer,* for plaintiff in error.

*M. T. Reynolds,* for defendant in error.

The following opinions were delivered :

By the Chancellor. An agreement to pay for goods or other property in ready money, does not deprive the defendant of his right to offset a debt due to himself, which, under other circumstances, would be a proper subject of set-off; unless it can be shown that the debt which is sued for in the name of

the plaintiff is not in fact his, but in equity belongs to another. In *Elaud* v. *Karr and others,* 1 *East's Rep.* 375, which was an action of assumpsit for goods sold, the defendants pleaded a set-off of the money due on several bills of exchange ; to which the plaintiff replied, that at the time of the sale of the goods the defendants agreed to pay for the same in ready money. To this replication there was a demurrer. The court of king's bench, upon argument, held that the time of the commencement of the action was the only time to be regarded in reference to the question of set-off ; and as there was a debt due from the plaintiff to the defendants at that time, they were entitled to set it off. So in the case of *Comforth* v. *Rivett,* 2 *Maule & Selw.* 510, where the plaintiff, on the 15th of September had sold to the defendant goods upon his agreement to pay ready money therefor, the defendant, at the trial, offered to set off a bill of exchange which had been accepted by the plaintiff, and was payable on the 16th of the same month ; the chief justice doubting as to the propriety of the set-off, permitted the plaintiff to take a verdict for the whole of his demand, with liberty to the defendant to move to reduce the verdict to the amount due, after deducting the bill of exchange. Upon a motion for that purpose, the rule to reduce the verdict, upon the defendant's delivering up the bill of exchange was made absolute ; Lord Ellenborough, and the whole court, being of opinion that the set-off should have been allowed. And in *Lechmere* v. *Hawkins,* 2 *Esp. N. P. Rep.* 626, where the defendant had borrowed money of his debtor, under an express promise to repay it notwithstanding the previous indebtedness, the counsel for the plaintiff insisted that the defendant could not set off the previous debt in an action for the money lent. But Lord Kenyon said he knew of no such law ; that there might be an honorary obligation on the defendant not to insist upon the set-off, but the court could not enforce such an obligation, or consider it as binding ; that there were mutual demands existing at the time the action was commenced, and such as the statute gave the defendant power to set off against the plaintiff's debt. Indeed, in every case of set-off under the statute, there is a technical violation of the defendant's promise to pay the plaintiff's debt in money

when it became due ; but there is, upon the other hand, a similar violation of the plaintiff's agreement to pay the debt which he owes to the defendant, which is also due. The law knows no difference in the obligation of one party to keep his promise more than the other. And the statute of set-off proceeds upon the equitable principle, that where both debts are justly due, by the neglect of each party to perform his agreement, the one debt should compensate the other ; so that neither party shall be permitted to recover the money which is due from the other, while he continues to withhold that which is legally and equitably due from himself. In this case the plaintiff had made an express agreement to pay to the defendant the first instalment upon his bond, on the first of January, 1830, which sum, together with the interest, was due and payable a long time before the defendant could have received any money upon the sale of the timber ; and the plaintiff was under the same moral as well as legal obligation to pay that instalment, when it became due, as the defendant was to perform his agreement to account for the proceeds of the timber, when a sale thereof should be effected ; unless there was some subsequent agreement between the parties, that the plaintiff should not be required to perform his engagement, as contained in the condition of the bond. It is not pretended, in this case, that there was any such agreement, either expressed or implied. At the time the bond was executed, the receipt for the timber was given up to the plaintiff ; and thereby the defendant, according to his agreement, as testified to by D. Eggleston, relinquished the lien he had upon the timber for the $300 which he had advanced, to enable the plaintiff to get his timber to market, which sum was included in the bond, and was payable on the first of January. The defendant, therefore, performed the whole of his agreement as testified to by D. Eggleston. Both parties probably supposed, at that time, that the plaintiff would be able to sell his timber in season to meet the payment first due upon the bond. In this, however, they were disappointed ; and when the defendant was going to Albany, in the latter part of December, he offered to take the original receipt and sell the timber for the plaintiff without charge. It is not alleged that at

this time there was any agreement, if the timber was not sold, and the money received before the bond became due, that the money should be paid over to the plaintiff, leaving the instalment due to the defendant, on the first of January, unpaid. On the contrary, the terms of the receipt given at that time seem to contradict that idea. The defendant agrees that if he should be able to sell the timber, he will *account* to the plaintiff for all it shall fetch ; not that he would pay over all the money to him, leaving the instalment unpaid, which was then about to fall due on his bond. If the plaintiff did not expect the defendant was in some way interested in the speedy sale of the timber, and that he might be induced to sacrifice it by a forced sale, for the purpose of obtaining the money to meet the first instalment on his bond, I cannot understand why the restriction was inserted in the receipt, that he should not sell the timber at less than six cents per foot. It is not usual to impose formal restrictions of this kind upon the powers of an agent who undertakes to do an act of mere neighborly kindness, without any view to his own benefit. The advice of the individual for whom the act is to be performed is generally considered sufficient in such a case. I am, therefore, inclined to think that the facts as well as the law of this part of the case have been mistaken ; that the agreement made before the giving of the bond, which was literally as well as fairly performed by the defendant, at the time the bond was given, has been substituted for the agreement made in the latter part of the next December, the terms of which last agreement are all embraced in the written receipt set forth in the plaintiff's declaration ; and that the defendant has not, in point of fact, violated any honorary obligation in asking to have the proceeds of the timber applied towards the instalment due to him on the plaintiff's bond. But as the receipt given by him does not, either in terms or by necessary implication, authorize him to keep the proceeds of the timber as a payment of the bond, *pro tanto,* and as the jury have decided against the defendant as to the supposed agreement made at the time of the execution of the bond, it becomes necessary to consider the question whether the circuit judge was right in

ALBANY, Dec. 1835.

Downer
v.
Eggleston.

ALBANY,
Dec. 1835.

Downer
v.
Eggleston.

his decision, that the nature of the plaintiff's demand was such that the defendant could not legally set off the money due on the bond, against that demand.

. There is no doubt in this case that the nature of the defendant's demand is such as to entitle it to be off set. But as a set-off can only be allowed in actions founded on demands which could be the subject of set-off according to law, it becomes necessary to enquire whether the demand for which the plaintiff's suit was brought could itself have been a subject of set-off, if the defendant had brought a suit upon his bond, instead of the suit being brought against him by the other party. The provision of the revised statutes upon this subject was not intended to introduce a new principle in the law of set-off; but merely to declare the then existing law on the subject, as settled in our own and the English courts. 2 *Johns. Rep.* 150. 5 *id.* 105. 6 *Cowen's Rep.* 613. *Bab. on Set-off*, 8. It is proper here to remark that the right of set-off does not depend upon the form in which the plaintiff thinks proper to bring his action, provided it is in form *ex contractu*, but upon the nature of the demand for which the suit is brought. The plaintiff cannot, therefore, by declaring specially, when he might recover the debt under a general count, deprive the defendant of his right of set-off. Thus in the case of *Burgess* v. *Tucker*, 5 *Johns. Rep.* 105, where the plaintiff, instead of bringing an action of debt upon an award in his favor, brought an action upon his arbitration bond, and assigned as one of the breaches the non-performance of the award, the defendant was allowed to give in evidence an offset against the award; leaving the penalty of the bond entire, to cover any further breaches of the condition thereof. So in the case of *Birch* v. *Depeyster*, 4 *Camp. Rep.* 385, where the plaintiff had a special count in his declaration against the defendant, for not accounting as the master of a ship, together with the common counts, Gibbs, Ch. J. decided, that as the plaintiff might have recovered his demand under the common count for money had and received to his use, he could not deprive the defendant of his set-off by declaring specially, and assigning a breach, for not accounting. The case of *The Assignees of Hunter* v. *Welsh*, 1 *Esp. Rep.* 378, where a contrary

principle was adopted, is not law. The plaintiff's demand was clearly for goods sold; and upon which demand an action of debt, or indebitatus assumpsit might have been brought to recover the money agreed to be paid to the plaintiff therefor; and the ingenious mode of pleading resorted to in that case, to enable the assignees of a bankrupt to defraud the defendant of his legal and equitable right of set-off, ought not to have been permitted to have that effect. In the language of Chief Justice Thompson, substance was yielded to form, in that case, for the purpose of excluding the set-off; although the defendant had no other means of ever obtaining satisfaction of his debt. In the present case the plaintiff has been permitted to recover the full price for which the timber was sold, under the supposition that the defendant had actually received the money for the same. If he had received the money the plaintiff could have recovered that money under the common counts, for money had and received to his use, as in the case of *Birch* v. *Depeyster;* and money had and received, although the amount is to be ascertained by the evidence given at the trial, and not by mere computation, is a proper subject of off-set. It was so, previous to the revised statutes, and the law in this respect was not intended to be altered in the recent revision. The case was intended to be provided for in one of the expressions adopted from the laws of Massachusetts, in the 3d subdivision of the 18th section. 2 *R. S.* 354. The expressions used in the law of Massachusetts are, " the defendant may give in evidence upon the general issue his or her demands against the plaintiff for goods delivered, monies paid, or services done," &c. And under the provision for allowing the defendant to off-set a demand for monies paid, the supreme court of Massachusetts have decided that the defendant might off-set a demand for money had and received by the plaintiff, or paid to him by another person for the plaintiff's use. *See Richards* v. *Blood,* 17 *Mass. Rep.* 66. The same court had also decided that board and lodging, washing, &c. were all included within the meaning of the terms goods delivered and services performed. *Witler* v. *Witler,* 10 *id.* 223. I cannot concur in the opinion expressed by the revisers, as contained in their note to the third subdivision of the 18th

section, in their report to the legislature, that these expressions, taken from the laws of Massachusetts, "happily convey the spirit of the decisions," even as far as those expressions were intended to go. It is evident, however, that the third subdivision of the 18th section of the revised statutes, was intended to embrace that class of demands which are usually recoverable under the common counts, as well as others in which the amount of demand is liquidated, or is capable of being ascertained by mere computation. The language of the statute must not, therefore, be so construed as to destroy the right of set-off in such cases, as it existed under the English statutes and our own. The law of set-off has been found very beneficial in its operation, and it is much better to extend than to abridge the right. The conclusion at which I have arrived in the present case is, that the circuit judge erred in rejecting the set-off, and that the judgment should be reversed, and a venire de novo awarded.

By Senator TRACY. I am satisfied that the judgment of the supreme court is erroneous on the ground on which it was put. The court treat the question as though the jury had found that there was an agreement that the bond should not be set off; whereas the question before the jury was, whether there was an agreement that the bond should be set off, or rather whether the proceeds of the receipt should be applied towards the payment of the bond. The defendant resorted to this evidence after the judge had decided that the plaintiff's demand was one against which a set-off could not be made; and of course the plaintiff had not, under this state of the case, any motive for proving an agreement that the bond should not be set off. The testimony which the supreme court refers to as showing this agreement, proves nothing in regard to it; for it relates expressly to a transaction long previous to the giving of the receipt upon which the action was brought. The jury, in fact, only found that there was no agreement to apply the proceeds of the receipt towards the payment of the bond; but if they had found what the court erroneously supposes they did find, such an agreement would not defeat the defendant's right to a set-off, if the nature of the

ALBANY
Dec. 1835.

Downer
v.
Eggleston.

demands entitled him to it. The principle has long been settled, that the right of set-off may be insisted on, though an express promise has been made to relinquish it. In *Lechmere* v. *Hawkins*, 2 *Esp. R.* 626, where the debt from the defendant arose on a loan by the plaintiff, on the making of which the defendant promised not to set off his demand against the plaintiff, Lord Keyon decided that though such a promise might create an honorary obligation, such as a man who made it ought to observe, yet he knew no way in which it could be considered a valid legal obligation. The same principle was again decided in *Eland* v. *Karr*, 1 *East*, 575, and in *Taylor* v. *Okey*, 13 *Vesey*, 180.

But on the other point, that the plaintiff's demand was one which admitted of a set-off to it, I am compelled to conclude, contrary to my first impressions, that the circuit judge was right and the supreme court wrong. The question depends on the construction to be given to the 3d subdivision of § 18, 2 *R. S.* 354, the words of which are, "it must be a demand for real estate sold, or for personal property sold, or for money paid, or services done: or if it be not such a demand, the amount must be liquidated, or capable of being ascertained by calculation." It will be seen that the language is changed from that of the former statute of set-off, where the words used were, "if two or more persons dealing together shall be indebted to each other, or have demands arising on contracts or credits against each other," &c. But though the words are so different, I cannot see that the present statute is more comprehensive than the former one. It may be doubted if it be as much so; though on looking into the notes of the revisers, I am inclined to believe that they intended to conform the new statute to the judicial constructions which had been given to the old one; and it would seem that the last part of the clause was intended to restrain demands where the damages were not liquidated to the strictest construction which in this respect the courts had given to this class of demands. The two cases which the note refers to on this point, are those of *Brown* v. *Cuming*, 2 *Caines*, 33, where it was decided that a party could not set off a claim for damages for not keeping a vessel insured, and *Gordon* v. *Bowne*, 2 *Johns. R.* 156, where it was decided

that a set-off could not be made to an open policy of insurance, though the plaintiff claimed for a total loss. In the latter case the court sustain the English doctrine, that uncertain damages cannot be set off, and that debts to be set off must be such as an indebitatus assumpsit would lie for ; and they approve the decision in *Colson* v. *Welsh,* 1 *Esp. Cas.* 378, that a demand sounding in damages for the breach of an agreement was not the subject of a set-off. In *Howlett* v. *Strickland, Cowp.* 56, a case also referred to by the revisers, it was decided that unliquidated damages on a covenant cannot be set off.

In the present case the supreme court, in saying of the plaintiff's claim that " it was a liquidated demand to all intents and purposes," are certainly incorrect, according to my notions of what constitutes a liquidated demand. The sum had not been fixed by the parties, nor by any one authorized to fix it for them; but I admit there is room for doubt whether the amount was " not capable of being ascertained by calculation." That a state of facts might have existed that would have given a character to the demand which would make its amount capable of being ascertained by calculation, is not improbable; but that the receipt in itself did not furnish a rule for computing the plaintiff's demand under it, is very plain. It was a receipt for a receipt ; but regarding it as a receipt for the timber, it amounted to an agreement to sell the timber if he could, for not less than six cents a foot, and to account for what it should sell for, after deducting the charges of the persons in whose possession it then was. This, instead of being a demand where the amount was liquidated, was to all intents a special agreement, which might be broken different ways, and where the damages for such breach were unliquidated and contingent. It is true the measure of the damages might be ascertained by proof, but so it may be in all other cases of an executory contract. Perhaps in the event of certain proof of the sum received by the defendant, after deducting the charges, indebitatus assumpsit for money had and received would lie against him ; but even then, a demand for money had and received is not made by the statute a subject of set-off. If it were, however, the state of the plaintiff's case

would not authorize a recovery in that form ; for there was
no proof that the defendant had received any money belong-
ing to the plaintiff, but that he sold the timber on credit ;
and the judge put the plaintiff's claim to the jury on the
ground that the purchasers were able to pay and there had
been sufficient time for collection.   In this view of the plain-
tiff's demand, the amount was neither liquidated nor capable
of being ascertained by calculation ; it was in every sense, a
demand sounding in damages for the breach of an agreement,
and as such not the subject of set-off, and consequently one
to which a set-off could not be made.

ALBANY,
Dec. 1835.

I have some doubts if the evidence justified the verdict to
the amount recovered, but this is not a question to be review-
ed here, and therefore, though I differ entirely from the su-
preme court in the reasons given for their judgment ; yet I
agree in the result' and shall vote for affirmance.

On the question being put, *Shall this judgment be revers-
ed?* the members of the court voted as follows :

*In the affirmative*—The PRESIDENT of the  Senate, the
CHANCELLOR, and *Senators* ARMSTRONG, BEARDSLEY, BECK-
WITH, CROPSEY, EDMONDS, EDWARDS, GANSEVOORT, HALSEY,
LAWYER, LOOMIS, MACDONALD, MACK, MAISON, WILLES—16.

*In the negative—Senators* BISHOP, DOWNING, FISH, FOX,
KEMBLE, LACY, LANSING, M'DOWELL, TRACY, VAN SCHAICK,
YOUNG—11.

Whereupon the judgment of the supreme court was RE-
VERSED.