Gutchess *v.* Daniels.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Johnson* and *Talcott*, Justices.]

————————•●•————————

ALEXANDER GUTCHESS *vs.* GEORGE B. DANIELS and JAMES C. DANIELS.

The statute of set-off proceeds upon the equitable principle of not allowing one party to recover, from another, money due, while at the same time he withholds from such other that which is legally and equitably due from himself.

In every case where there is a good cause of action, and also a valid claim which is the subject of set off, in the hands of the defendant, there is a mutual violation of the obligation to pay.

An agreement by commission merchants to sell grain to be shipped to them by another firm; to apply one half of the net proceees of the sales upon a prior indebtedness of the consignors; and that the other half shall be paid over to the latter, *and not otherwise applied,* is not binding upon the consignees, so as to deprive them of their legal right to set off the prior indebtedness, against the demand of the consignors in the hands of an assignee.

APPEAL from a judgment entered upon the report of a referee.

The action was brought to recover the sum of $748.72, one half the net profits due and belonging to the firm of

Gutchess & Yawger, from the defendants, on a boat load
of wheat consigned to the defendants and sold by them, in
1867, which claim was assigned to the plaintiff on the 22d
of November, 1867.

The referee found the following facts : That during the
year 1867, and up to the time of the commencement of
this action, Ira B. Gutchess and John P. Yawger were
copartners in business at Port Byron, Cayuga county, in
buying grain and produce and shipping the same to the
New York market, and to other places, under the name
and firm of " Gutchess & Yawger." That during the
same year, 1867, and up to the time of the commence-
ment of this action, the defendants herein were copart-
ners in business in the city of New York, under the name
and firm style of " G. B. & J. C. Daniels," as general pro-
duce and commission merchants.    That prior to the month
of July, 1867, the said Gutchess & Yawger had consigned
grain and produce to the defendants at the city of New
York, and the defendants had sold the same and paid
drafts upon them drawn by Gutchess & Yawger, and had
advanced large amounts of money to said Gutchess &
Yawger, more than the net proceeds of the grain and
produce so consigned to them.    That on the 17th day of
December, 1866, the said Gutchess & Yawger were in-
debted unto the defendants in this action in the sum of
$4403.81, on account of their acceptances and advances
to said Gutchess & Yawger.    That on the 29th day of
July, 1867, the said Gutchess & Yawger agreed and con-
tracted with the defendants that they, the said Gutchess
& Yawger, should purchase grain at Port Byron, and at
other places in western New York, and ship and consign
the same to the defendants at New York city, and that
said Gutchess & Yawger should draw drafts upon the
defendants for money to pay for said grain, or the liabili-
ties incurred in the purchase thereof, when the same
should be shipped and consigned to the defendants.    That

Gutchess *v.* Daniels.

the said Gutchess & Yawger also agreed to place, and did place, in the hands of the defendants, certain promissory notes to the amount of $5000, which said notes were to be held by the defendants as collateral security for any losses that might occur in this transaction with said Gutchess & Yawger in the purchase and sale of the said grain. That the defendants agreed to accept the said drafts to be drawn by Gutchess & Yawger upon them for the moneys expended in the purchase of said grain, and to pay said drafts, and to accept said grain and produce at their place of business in the city of New York, on the arrival thereof, and to sell the same for Gutchess & Yawger for their usual commission. That it was also agreed by and between the said Gutchess & Yawger and the defendants, that the lattter should apply one half of the net profits arising from the purchase and sale of said grain, to the payment of the indebtedness herein before mentioned of said Gutchess & Yawger to the defendants, and the other half of the said net profits were to be paid by the defendants to the said Gutchess & Yawger, and not to be otherwise applied by the defendants. That under said agreement Gutchess & Yawger, in the month of August, 1867, purchased a cargo of wheat containing 7236 bushels and 58 pounds, and shipped the same upon the canal boat " *Garrison,*" and consigned the same to the defendants in this action, at the city of New York. That the defendants received the said cargo of wheat, and on the 21st day of August, 1867, sold the same for and on account of the said Gutchess & Yawger, and that the net profits thereon, over and above all charges, commissions and deductions entitled to be made therefrom, amounted to the sum of $1497.44. That on the said 21st day of August, 1867, Gutchess & Yawger's indebtedness to the defendants of $4403.81, had not been paid, but was then due and owing. That on that day, or very soon thereafter, the defendants credited one half of the net profits of said cargo of wheat,

$748.72, upon the said indebtedness of Gutchess & Yawger. That on or about the 7th day of September, 1867, Gutchess & Yawger demanded the other half of the net profits of said cargo of grain, to wit, $748.72, of the defendants; and the defendants declined and refused to pay over the same or any part thereof; that before the commencement of this action, and on or about the 22d day of November, 1867, the said Gutchess & Yawger, for value, sold, assigned and transferred the other half of the net proceeds of the said cargo of wheat, amounting to $748.72, to the plaintiff in this action.

The referee found, as conclusions of law:

1st. That the contract made by Gutchess & Yawger and the defendants, on the last of July, 1867, was a legal, valid and binding contract.

2d. That under and by virtue of the said contract, the one half of the net profits of said cargo of wheat, $748.72, belonged to, and was the property of, said Gutchess & Yawger; and the defendants had no right to apply the same, or any part thereof, upon the prior indebtedness of said Gutchess & Yawger, but were bound, by said contract, to pay over the same to the said Gutchess & Yawger.

3d. That by virtue of the said assignment and transfer from Gutchess & Yawger, on the 22d day of November, 1867, the said one half of the net profits of said cargo of grain became the property of the plaintiff in this action.

4th. That the indebtedness of the said Gutchess & Yawger to the defendants could not be set off against the half of the said net profits of the cargo of wheat.

5th. That upon all the facts the defendants were liable to the plaintiff for the amount of the one half of the net profits of the said cargo of wheat, $748.72, together with interest thereon from the 7th day of September, 1867, amounting to the sum of $876.83, for which sum he ordered and directed judgment for the plaintiff against the defendants, together with costs and disbursements.

Gutchess *v.* Daniels.

On the trial, when the plaintiff rested his case, the defendants moved that the complaint be dismissed; because,

1. The evidence shows that these assignors were and are indebted to the defendants from the 29th day of July, 1867, down to the present time, in the sum of $4403.81 and that they were so indebted at the time of the assignment of this demand.

2. That the assignors, after taking out the whole of the profits of the boat load of wheat, are still indebted to the defendants in a large sum.

3d. That the assignment through which the plaintiff derives title to the cause of action, alleged in the complaint, is subject to and defeated by the said continuing indebtedness of $4403.81.

4. That the defendants had and have a legal right to apply the whole of the profits of said boat load of wheat upon their then existing greater indebtedness of Gutchess & Yawger, whatever may have been the terms of the contract under which such profits arose and came to the defendants' hands.

5. That the plaintiff has not proven sufficient facts to constitute a cause of action against the defendants.

The referee denied the motions, and to such denial and to the denial of each and every one thereof, separately, the defendants duly excepted.

From the judgment entered upon the report, the defendants appealed.

The principal question, upon the appeal, was, whether the defendants had a right to apply *the whole of the net profits* of the grain to the payment of the old indebtedness of Gutchess & Yawger to them, in direct opposition to their contract.

*Miller & Hawley,* for the appellants.

I. The prior and continuing indebtedness of Gutchess & Yawger to the defendants, was and is a legal and

valid set-off against, and extinguishment of, the demand in suit. A defendant has a right to insist upon a set-off, though he has positively agreed to account for and pay over to the plaintiff moneys which the plaintiff has authorized him to receive as his agent. (*Downer* v. *Eggleston,* 15 *Wend.* 51. *Waterman on Set-Off, &c.* 630–640, §§ 579, 580, *and cases cited.*) The principle has long been settled, (in this State and in England,) that the right of set-off may be insisted on though an express promise has been made to relinquish it, founded on a good consideration. (*Lovett* v. *King,* 16 *Ind.* 464. *Barb. on Set-Off,* 93, 137. 1 *Wait's Law and Prac.* 966. 2 *Cowen's Treat.* 197. 2 *Pars. on Cont.* 248. *McGillivray* v. *Simson,* 2 *Car. & P.* 320. *S. C.,* 9 *Dow. & Ryl.* 35 ; 15 *Wend.* 61.) This defense is available against the plaintiff. (*Code,* § 112.)

II. The defendants, factors or commission merchants, had a lien for their general balance, upon all the goods of their principal consigned to them in the general course of business, and upon the avails of such goods when sold by them. (2 *Kent's Com.* 640. *Id.,* 10*th ed.* 888, *note, and cases cited.* 10 *Paige,* 205–210. *Farnum* v. *Boutelle,* 13 *Metc.* 159.)

III. The referee erred in not nonsuiting the plaintiff on the grounds stated by the defendants.

IV. The referee erred in not finding, as requested by the defendants, that the plaintiff's assignors, the said Gutchess & Yawger, themselves violated and abandoned the alleged agreement set out in the complaint. 1. The said agreement was for the entire season's business. 2. Gutchess & Yawger notified the defendants, before the receipt of this grain, that they did not intend to go on. 3. Gutchess & Yawger authorized "all the gain, if there be any, to be applied on their old indebtedness." 4. This being so, Gutchess & Yawger had no claim against the defendants to assign to the plaintiff, and the plaintiff took nothing by his assignment.

Gutchess *v.* Daniels.

V. Gutchess & Yawger violated and abandoned their agreement set out in the complaint, (1) by the withdrawal of Houghtaling, and the security deposited by Houghtaling; (2) by shipping grain to Walbridge. 1. The drafts drawn by Gutchess & Yawger were to be indorsed by Houghtaling. The defendants could not hold securities for any other drafts. 2. Houghtaling not only withdrew, but he withdrew $1800 of the securities. 3. Houghtaling had been for years the active man of the concern—the only one in it of experience. The defendants were not bound to deal with new men. 4. Gutchess & Yawger did not ship grain to the defendants " from this time out," *i. e.,* through the season, but after sending this load they shipped to Walbridge.

VI. The referee erred in sustaining the plaintiff's objection to this question asked Houghtaling by the defendants: " What was your financial condition during your connection with Gutchess & Yawger ?" Also in sustaining the plaintiff's objections to the several questions asked Ira B. Gutchess by the defendants. These questions related to an essential element of the contract—Houghtaling's connection with the business—and were pertinent. Also, in sustaining the plaintiff's objection to the question asked the witness Upham, for the same reason.

VII. Gutchess & Yawger having first violated and abandoned their agreement, neither they nor their assignee can maintain an action upon it for an alleged breach thereof, nor for a specific performance of its conditions. (*Willard's Eq. Jur.* 297.) The defendants had a right to extinguish Gutchess & Yawger's (or the plaintiff's) smaller demand, by their greater demand existing at the time against Gutchess & Yawger, and due before the assignment to the plaintiff. The defendants had a right to insist upon their lien for their general balance against Gutchess & Yawger, growing out of their prior dealings as commission merchants or factors for and with them. The defendants had

a right to defeat the plaintiff's cause of action by reason of the prior default of the plaintiff's assignors, in reference to the contract out of which the demand in suit arose.

VIII. The referee erred in ignoring the several questions of fact, material to the issue, upon which he was asked to find by the defendants, and as to which he neglected to find one way or the other. These facts constituted one of the defences set up by the answer, and were therefore pertinent. They were supported by evidence in reference to which there was no conflict. The failure of the referee to find as to these facts—necessarily negativing them by implication, (49 *Barb.* 362,) is an error of law, for which a new trial should be granted.

*H. V. Howland,* for the respondent.

The plaintiff claims and insists that the contract of July 26, 1867, was binding upon the defendants, and that they had no right to use, or convert, or apply in any way, the one half of the net profits arising from sales in any other manner than was agreed upon.

I. The contract between Gutchess & Yawger and the defendants, to apply one half the net profits to the payment of the debt of Gutchess & Yawger to the defendants, and no more, was binding on them; and they had no right to apply the other half to the payment of their debt, contrary to their agreement. And the fact that Gutchess & Yawger owed the defendants a large debt at the time of the contract, which still remains unpaid, gives them no right to misapply our money, contrary to their agreement, or to offset their demand against our claim. The cases relied upon by the defendants do not sustain their position. The case of *Eland* v. *Karr,* (1 *East,* 375,) was assumpsit for goods sold and delivered. The defendant pleaded an offset. The plaintiff replied that the goods were to be paid for in ready money. The court decided that the debt due to the defendant might be set off against the plain-

Gutchess *v.* Daniels.

tiff's demand. The case was decided under the statute of
2 Geo. II. But the contract in that case to pay in ready
money was, in its legal effect, general, and had no refer-
ence to the debt due the defendant. It was merely to pay
for the goods. Here the effect is to provide just what
portion of the profits shall, and what shall not, be applied
upon this very debt. It is an express contract not to apply
more than one half the profits on said debt. The case of
*Downer* v. *Eggleston,* (15 *Wend.* 52,) was an action to re-
cover for lumber which the defendant agreed to sell for
the plaintiff, and account to the plaintiff for the proceeds.
The defendant sought to set off an indebtedness owing
him by the plaintiff. ·The court held that the defendant
had a right to insist upon a set-off, although he agreed to
account for the sales of the lumber. The court says, at
page 57 : " The defendant agrees that if he should be able
to sell the timber, he will account to the plaintiff for all it
shall fetch, not that he would pay over all the money to
him," &c. And the learned judge came to the conclusion,
in that case, that the defendant had not violated any hon-
orary obligation of the agreement in asking to have the
proceeds of the timber applied to the installment of the
bond. But in that case the agreement of the parties had
no reference to the indebtedness existing between them at
the time. It was a simple agreement to account for the
avails of the timber, and not an agreement, like ours, to
apply a certain portion of profits to the payment of a cer-
tain debt, and pay the rest of our money to us. In the
case of *Henniss* v. *Paige,* (3 *Whart.* 275, *cited in Waterman on
Set-Off,* 637,) the rule is laid down, that where there is an
agreement not to offset a demand, or to apply it in a differ-
ent way, it will be binding. In that case " the obligee in a
bond agreed with the obligor, that in consideration of a
compromise of conflicting claims, and further advances of
cash, the obligor, in the bond, bound himself not to purchase
claims against the obligee to set off against the bond. The

promise or agreement was a part of the consideration, without which the bond would not have been given, and therefore, on the plainest principles of honesty and good faith, the obligor was held to his bargain. The court held that he had precluded himself, by his agreement, from setting off a judgment which had been assigned to him after the execution of the bond. The statutes, the court held, were intended for the benefit of the defendants, and it is a privilege that they may or may not exercise, as they think proper. If they choose by their agreement to waive the benefit of the statute, they are at liberty to do so, and it is the duty of the court not to make agreements for the parties, but fully and fairly carry them into execution.

II. But this case is materially different from any of the cases cited by the defendants. In those cases the question was simply whether one indebtedness could be set off against another, contrary to an agreement not to do so. In this case the defendants were not indebted to Gutchess & Yawger for grain sold by them to the defendants, but they held in their hands $748.72 of the moneys of Gutchess & Yawger, and to which the defendants had no title whatever. The defendants were but the agents of Gutchess & Yawger to sell this grain, and the avails, except so far as otherwise applied by express agreement, belonged to the principals; and it is submitted they could not apply or appropriate the moneys of the principals, contrary to agreement, or their permission. (24 *How. Pr.* 274. 14 *id.* 131. 49 *Barb.* 403.)

III. But it is claimed further, that the demands of the defendants against Gutchess & Yawger were unliquidated demands, and were not the subject of offset, under the statute. The indebtedness of Gutchess & Yawger to the defendants was simply an open running account. The referee does not find as matter of fact that this long account had ever been liquidated or settled by the parties, or any

Gutchess *v.* Daniels.

one else. And he could not so have found under the evi-
dence. (3 *R. S.* 635, *5th ed. Butts* v. *Collins,* 13 *Wend.*
139.) Again, we say, the defendants' claim cannot be
allowed as a set-off against the plaintiff's demand in this
action, for the reason that the demand upon which this
action is founded is not the subject of set-off itself. (3 *R. S.*
635, *subd.* 5, *5th ed.*) It is not a demand for real estate
sold, personal property sold, or for money paid, or services
done, nor liquidated.

*By the Court,* JOHNSON, J. The referee held, as a con-
clusion of law, that the prior indebtedness from the plain-
tiff's assignors to the defendants, was not a valid set-off,
and could not be allowed against the claim assigned for
one half the profits of the cargo of wheat. At the time
the wheat was shipped by the plaintiff's assignors to the
defendants, to be sold on commission, the former were in-
debted to the latter in the sum of $4403.81, which was
then due. It had been agreed between them that the
plaintiff's assignors should, through the summer of 1867,
ship grain to the defendants, to be purchased with funds
to be furnished by the defendants, and sold by them on
commission, and that one half the net profits should be
applied by the defendants upon the old indebtedness, and
the other half paid over to the said assignors by the de-
fendants, and not otherwise applied. This agreement did
not deprive the defendants of the right to set off enough
of their claim to extinguish the demand in suit, in the
hands of the plaintiff. Their demand against the plaintiff's
assignors was due at the time of the assignment. It was a
proper demand to be set off. The action was upon a de-
mand which would have been the subject of set-off. There
is nothing in the agreement as found, which could have
prevented the defendants from commencing an action to
recover their demand against the plaintiff's assignors at
the time of the assignment, or when this action was com-

Gutchess *v.* Daniels.

menced. The statute, therefore, gave to the defendants the right to set off their demand. (2 *R. S.* 354, § 18.)

It has been repeatedly held that an agreement like the one found in this case did not debar the defendant of his right of set-off. (*Downer* v. *Eggleston*, 15 *Wend.* 51. *Eland* v. *Karr*, 1 *East*, 375. *Cornforth* v. *Rivett*, 2 *Maule & Selw.* 510. *McGillivray*, v. *Simpson*, 9 *Dowl. & Ry.* 35. *S. C.*, 2 *Car. & P.* 320. *Barb. Law of Set-Off*, 93, 137. 2 *Pars. on Cont.* 249. 1 *Wait's Law and Prac.* 966.)

The case of *McGillivray* v. *Simpson*, (*supra*,) is quite like the case at bar, and it was held that the agreement was not binding upon the defendant, so as to deprive him of the legal rights he possessed, of lien and of set-off. In every case where there is a good cause of action, and also a valid claim, which is the subject of set-off, in the hands of the defendant, both being due, there is a mutual violation of the obligation to pay.

The statute of set-off proceeds upon the equitable principle of not allowing one party to recover from another, money due, while at the same time he withholds from such other that which is legally and equitably due from himself. The exception to the conclusion of law was, therefore, well taken, and the judgment must be reversed.

Judgment reversed, and a new trial ordered; costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 14, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]