Daly, C. J.
The court had jurisdiction to allow the words “and son ” to be stricken from the title and to direct that the name of Abraham Quackenbush be inserted. The action was brought against the defendants as copartners; and where that is the case the Code provides (sec. 1932) that if the summons is served upon one or more, but not on all the defendants, the plaintiff may proceed against the defendant or defendants served, unless the court shall otherwise direct, and if he recovers make the final judgment against all the defendants jointly indebted, upon which judgment the execution issues in form against all the defendants (sees. 1934, 1935), but is not enforced against a defendant who has not been served with the summons, except that it can be collected out of the property jointly owned by him with a defendant who has been served. The answer in this action is by J. E. Quacken-. bush, one of the partners, from which it may be assumed that he was the only one served in the action ; and the amendment appears to have been made for the purpose of having the name of both parties inserted in the summons and complaint instead of J. E. Quackenbush and son,' as it was in the summons and complaint, which amendment may be made under section 451, and which in fact the court under .the Code, when the true name becomes known, orders to be made upon such notice and such terms as it may prescribe. The cases to which the counsel for the appellant refers are cases where a new defendant is sought to be brought in merely by an amendment, which can be done only by service upon him of a supplemental summons, or, in other words, where defendants are attempted to be added without the service of process *295 by simply amending the pleadings, which cannot be done. Such was not the nature of the amendment here. It did not, and could not, authorize an individual judgment against Abraham Quackenbush, the judgment in the action being one that could be collected only out of the property jointly owned by him and the partner who had been served.
Before passing upon the exception taken to the judge’s charges, it will be necessary to consider the case presented by the evidence. It appears that the firm of J. E. Quackenbush & Son, who are hardware merchants, had an order from Italy for thirty shears, an article manufactured by the Benz Hardware Company, a manufacturing company at Bridgeport, Connecticut, having an office for the transaction of business in this city. The defendants sent a letter to the company’s office, asking at what price they would supply the quantity of shears wanted, payment to be made in ten days. This was followed hy further correspondence, until finally J. E. Quackenbush & Son sent a letter stating that the company might furnish the shears required at the company’s price; and the company on January 26, 1883, delivered the shears at the store of J. E. Quackenbush & Son, with a bill made out in the name of the Benz Hardware Company, in which it is stated that the articles which are enumerated in the bill were sold to J. E. Quackenbush & Son, “ terms cash within ten days from date.” This is the transaction as it appears by the documentary evidence — that is, the letters between vendor and vendee and the bill delivered with the goods — and it agrees with the other evidence given by the defendant; but the account of the transaction given by the plaintiff’s witness Scliram conflicts with this documentary evidence. He testifies that on January 25, 1883, the day before the goods were delivered, he went to the defendants’ store, where he saw Abraham Quackenbush, the son, and told him that the company could not give ten days’ time; that the defendants could have the shears, but not without cash upon delivery; that Abraham Quackenbush said that they could not do that; that *296 the shears were for export; that he did not want to pay the money before he got it from his customer, and to send the goods to them on Thursday; that they would then send the bill to the office of the company and have it signed, and on Saturday following they would go to their bank and get the money, and that the company might send up about noon on that day and get a check for the amount of the bill. The bill delivered on the following day with the goods, however, states the terms to be cash “ within ten days from date,” and whether the terms of the sale were cash on delivery, modified by an understanding that payment might be made the day after the delivery, or the terms were cash within ten days, as stated in the bill of parcels, was a question for the jury.
Whatever may have been the fact in this respect, it appears that before making the purchase Abraham Quackenbush bought for $100 of one W. F. Swords, of Connecticut, a promissory note of the company for $467.51, given by the company to Swords for goods received, and which note, when purchased by Quackenbush, was past due, and had been protested for non-payment.
Quackenbush testified that he bought the note for $100, intending to use it in payment of the bill fqr the shears, thinking, as he said, that “ if he could make any money by it, well and good.” That his object in buying the shears was that “ he had a place to put them,” and that if he had “ no where to place them” he would have bought neither them nor the note. On the morning after the delivery of the goods the attorney of the defendants went to the office of the company, and, seeing the treasurer, told him that he came to pay the defendants’ bill and offered in payment of it the $467.51 note and the residue of the- amount in cash. The treasurer refused to take the note, said that the goods did not belong to him and that he wanted the cash as had been agreed upon. The treasurer, as the attorney testified, was very angry, declared that it was substantially a fraud, and spoke of an arrest, and about an hour after, he sent Schram, the clerk, to *297 the defendants with a bill for the shears, made out in the name of the Benz Hardware Company, but having at the end of it a direction to the defendants to pay the amount to the plaintiff. Schram saw the elder member of the firm, J". E. Quackenbush, and presented the bill to him, who said “ we have made payment in another way before this.” Schram said that they knew that, but that they did not want to receive the note in payment of the goods; that they wanted cash, stating that the goods belonged to the plaintiff. Schram said something , further about an arrest to which Quackenbush replied: “ Well, go ahead ; we are prepared.” These 300 shears formed part of a 1,000 shears which the plaintiff about ten months before had bought of the Benz Hardware Company, who were the manufacturers of them ; there was no question in the case as to the integrity of this purchase. The 1,000 shears were delivered to the plaintiff at his place of business in Brooklyn; he gave his cheeks for them, which checks it was shown had been paid. When the Benz Hardware Company received the order for the goods, they inquired of the plaintiff if he had them on hand, advising him of the order they had received, and he replied that he would fill the order and pay the company a commission upon the sale, but that he did not want to give any time, and it further appeared that the goods were taken from the Benz Hardware Company’s office in this city when they were delivered to the defendant. Hpon this state of facts, the judge charged the jury that if they found that the plaintiff owned the property, but that the defendants had no notice whatever of the fact, but acted in good faith without knowledge, notice of the plaintiff’s title or of any circumstance calculated to put them upon inquiry, the jury should allow as an offset to the plaintiff’s claim the note for $467.51 with interest, and render a verdict for the plaintiff for the balance then remaining, and in concluding his charge finally instructed the jury as follows: “ If the defendant J. E. Quackenbush had knowledge on the day he received' the goods, or the day following, that the goods belonged to the plaintiff *298 and not to the Benz Manufacturing Company, he might have said, if that be so the plaintiff may come and take his goods away, I don’t want them, I bought them, supposing they belonged to the Benz Manufacturing Company, against whom I have an offset. If, however, the defendant did not see fit to exercise his legal right, and with knowledge and notice that the property was the plaintiff’s, and the' defendant had it in his power at the time to return the property, he is liable for the contract-price,” to which part of the charge the defendant excepted. It is a well settled rule that where a factor sells goods as his own, and the buyer having no knowledge that he is acting as a factor, has a right to assume that he is the owner, that such a buyer in an action bi’ought by the principal for the price, may set off any demand which he has against the factor. In the earliest reported cases in which this rule is found (Rabone agt. Williams, 7 T. R., 360, note a),'it is thus broadly stated liy lord Mansfield : “ Where a factor acting for a principal delivers goods in his own name, the person contracting with him has a right to consider him to all intents and purposes as a principal, and though the real principal may appear and bring an action upon that contract against the purchaser of the goods, yet the purchaser may offset any claim he may have against the factor in answer to the demand of the principal.” Baily says that this rule “ is built upon the principle that where the buyer has been led to contract under the impression that his contract is with one person he cannot afterwards be defrauded of the rights which he had against that person by the introduction of a third to whom he was a stranger ” (Baily on Principal and Agent, by Loyd,p. 327).
Story declares that the ground of this doctrine “ undoubtedly is that where any person holds himself out as a principal with the consent of the owner, third persons wdio deal with him bona fide are entitled to all the rights which they would have if he were the real principal ” (Story on Agency [2 Am. ed.], 390). And justice Chambers, in Houghton agt. Mathews *299 (3 Bos. (& P., 490), and chief justice Kelson, in Mitchell agt. Butel (10 Ward, 495), approve of the reason which is given for the rule in Culler’s Bankrupt Laws, that the parties by their conduct having enabled their agent to gain credit as the-sole owner, and the buyer having contracted with him dona fide in that character, they cannot recover against the buyer without allowing him the same advantages and equities in liisdefense that he would have had against their agent.
As indicated in the statement of the rule, it does not apply where the buyer knows that the seller is not the owner, or where the circumstances are such as should put him upon inquiry especially when the facts might easily have been ascertained, and he must be regarded as negligent in not making the inquiry (Baring agt. Carry, 2 B. & Ald., 137; Young agt. White, 7 Beav., 506 ; Meel agt. Brothers, 10 Wend., 495, 496; Hogan agt. Stroub, 24 id., 458; Bliss agt. Bliss, 7 Bosw., 339; Judson agt. Stillwell, 24 How., 553). And in applying the rule a distinction is recognized between a factor and a broker, because factors have the possession of goods_ upon which they usually make advances, and having a special property in them, have authority to sell them in their own name; whereas the broker has not possession of the goods, the purchaser is not deceived by that circumstance, and as the employment of a broker gives him no authority to sell the goods as his own, he cannot bind his principal if he does so (Baring agt. Corry, 2 B. & Ald., 144).
The first question which this case presents is, what was the effect of the delivery of the goods upon the representations made to the broker on the delivery of them, assuming it to have been made as stated by the plaintiff’s witness. This question arises in Chapman agt. Lathrop (6 Cow. R., 110), a case in many of its features resembling the present one. In that case the defendant went to the plaintiff’s store and inquired for certain articles, and, being informed that the plaintiff had them, the defendant requested that they might be put as low as possible, as they would pay for them in *300 cash, upon which the plaintiff said that if they were to he paid for in cash he would sell them as low as he could, and upon the same day they were delivered to the defendant, who took them to his store upon carts, and upon the next day the defendant’s clerk called on the plaintiff and tendered a protested note indorsed by the plaintiff, and offered to pay the balance in cash. The plaintiff refused to receive the note, and about a fortnight after demanded the property, which the defendants refused to deliver. The plaintiff brought trover, and it was decided that the action could not be maintained. The court held that if there was a fair contract for the goods and they were delivered to the purchaser without any fraudulent contrivance on his part to obtain possession, the property passed, and that the plaintiffs’ remedy was an action for the price. Where the agreement, said chief justice Savage, is to pay down for goods and the vendor delivers them without actual payment, the vendee may avail himself of any legal set-off, notwithsanding that the agreement was to pay ready money, and that there was no fraud under the circumstances above stated in paying the plaintiffs with their own paper. In Hogan agt Short (24 Wend., 458), the action was brought to recover for goods sold. It appeared in this case that one Morris, who was the agent of the plaintiff, sold the goods to the defendant without disclosing the name of the principal. The sale was for cash or for payment in from two to six days, which was deemed a cash sale. Morris, the agent, had stopped paying twenty days before the sale, a fact that was notorious, and when the sale was made the defendants held Morris’ note for a larger amount than'the price of the goods; but which note had not yet matured. Morris called twice upon the defendants for the cash, but was told by them that they were short of funds. About twenty days after the sale he called again, when they told him that they thought he ought to let the claim go against his note which was then coming due. He replied that he had no right to do so, that the goods were not his, that the *301 owners lived in Baltimore, and that he must get the money. He testified further that he was a commission merchant, which was upon his sign; that if the defendants did not know it, every one else did, and that he had no doubt that they knew that he had stopped payment before the sale; and evidence was given tending to show that the defendants made the purchase with the intent to set off the note instead of paying cash, according to. the contract. The court, after a very full review of the decisions under the rule before stated, from the earliest report of it in Baylone agt. Williams (supra), held that under the circumstances stated the set-off must be allowed, and the judgment in favor of the plaintiff was reversed.
Bronson, J.,
who delivered the opinion of the court, said that it might be an open question whether the vendor, immediately after the delivery and when he first discovered that the vendee does not intend to paycash, may not disaffirm the sale and bring trover for the goods if they still remain in the hands of the vendee; but that, whatever may be the fraud, if the goods are actually delivered in pursuance of a contract of sale, the vendor may elect to affirm it; and that he does affirm it if there be any considerable delay in requiring a return of the goods after the discovery of the fraud, or where, as was done in that case, he brings an action for the price. The judge held, further, that the fact that Morris was a commission merchant had little or no tendency to prove notice, because he was also a trader on his own account; that the fact that he had stopped payment proved nothing, because after the happening of that event he would be as likely to sell his own goods as he would goods which a third person had previously intrusted' to him; that the fact that the defendants intended to set off the note which they held against him tended to show that they believed that Morris was the principal, for otherwise they could hardly hope to accomplish their .object; that it made no difference that the defendants bought the goods from Morris for the very purpose of obtaining payment of .their debt against him, and that upon the facts stated *302 defendants were entitled to a verdict. He said it would not do in such a case to guess that the vendee had notice, but that it must appear from the nature of the transaction, or by something that transpired before the contract or sale was completed, that the vendee had good reason to believe that he was dealing with an agent, and that in a "commercial community no rule short of this would afford sufficient protection. It appears to me that these questions arise upon the facts in this case. The transaction upon the part of the defendants is not, it is true, one that commends itself to the favorable consideration of the court. The offset was not one arising out of any transaction between the defendant and the Benz Hardware Company, but the defendants, after they had obtained an •order for a certain quantity of an article which that company manufactured, .and from whom they meant to purchase it, went and bought a depreciated paper of the company at the •enormous discount of seventy-nine per cent, that they might make $367 out of an order for goods for which they were to pay but $522, and when■ ascertaining, according to the plaintiff’s witness, that the company would not, at the price agreed upon, give any time, but wanted, as the witness expressed it, “ spot cash payment upon delivery,” the defendants, to secure a delivery, practiced the artifice of representing that they did not want to pay cash until their customer had paid them, coupled with the promise that when the bill of lading, as I understand the testimony, was signed, they would give the company their check for the amount of the bill.. But notwithstanding these circumstances I think, upon the authorities, that if the defendants had the right to assume when they made the contract for the purchase of the goods that the company were the owners of them, they had the right in this action to set off the note as a valid demand which they had against the company. It was notwithstanding held, as has been stated in Hogan agt. Shroub (supra), that although the. buyer when he agreed to pay cash intended to pay for the goods with the note that he held of the factor, that that would *303 not affect his right to set it off in the action brought by the principal for the price of the goods, the note being then due; and that this is the law appears also by the cases of Eland agt. Karr (1 East, 375), Comfort agt. Rivett (2 M. & Sel., 510), Sehmer agt. Hawkins (2 Esp. N. P., 626), Downer agt. Eggleston (15 Wend., 51). For the set-off is a legal right, and may be insisted upon even where an express promise has been made to relinquish it (Downs agt. Eggleston, supra ; Taylor agt. Okey; 13 Ves., 180).
One of the early cases in which a set-off of the vendor’s paper in an action brought for the goods was not allowed (Fair agt. McIver, 16 East, 130) resembled the present case in the feature that the paper of the- vendor was obtained for the purpose of using it in payment for the goods bought; but the case is distinguished from the present in the circumstance that the purchaser there was not the bona fide owner of the bill of exchange which was offered to the acceptor in payment for the goods bought, but was acting for the benefit of the real owners, one of whom, knowing that the vendor had not been regular in his payment, informed defendant, who made the purchase, that he was in doubt as to the acceptor’s affairs, and upon his solicitation and suggestion, defendants undertook to secure the payment of the bill by purchasing goods •of the acceptor; after the delivery of them offering the bill in payment, which he refused to take. The acceptor shortly •afterwards failed, and in an action brought by his assignee against the defendants to recover for the price of the goods, it was held that the defendants could not set off the bill against the .acceptor’s assignees, as they were not the holders of it in their own right, but merely held it as trustee of the real r ./ners. “ As such trustees,” says Bagley, J., “ they could not set it ■off against a demand upon them in their own right.” Lord Ellenborough went beyond this, declaring that he was not ■satisfied with the previous decisions of lord Kenyon in Eland agt. Cor (1 East, 375), that upon the sale of goods for ready money the condition is performed by offering in payment the *304 vendor’s own paper, but in subsequent cases his view was not concurred in, but that of lord Kenton was held to be the law (See the cases in Hillard on Sales [3d ed.], 239).
Where the agreement is to pay cash, there is no reason why the vendor should refuse to receive his own paper, if it is due, as equivalent to cash, and it has been so held (Mayer agt. Mias, 8 Moore, 275; 1 Bing., 311). There is not in such a case that fraud which exists where a contract is made for the purchase of goods for cash and possession of them obtained with a preconceived intention not to pay for them.
What appears in the present case is, that upon a sale of goods a delivery of them was obtained with a preconceived intention to pay for them in the depreciated paper of the vendor, which had been bought for that purpose, and does not amount to a connivance (Mayer agt. Mias, 8 Moore, 275 ; Id., 1 Bing.; Kennet agt. Robinson, 2 Id. Marsh. [Reg.], 84; Hillard on Sales [3d Ind. ed.], 309-405 ; Wells on Replevin, pp. 399-551). For the goods being delivered upon the promise to pay cash upon the Saturday following, the possession in the first instance was lawful, and the plaintiff being the owner of the goods, as he had authorized the sale of them only for cash, was entitled to a restoration of them on the breach of that condition, then a demand of them of the defendant and a refusal on their part to give them up was necessary before an action could be maintained for a conversion, oi*, more properly, for the wrongful detention then of the goods (Hall agt. Robinson, 2 N. Y., 295; Addison on Torts [3d ed.] 312).
But there has been no demand for the restoration of the goods, but a demand only, as in Chapman agt. Lathrop (supra), for the purchase-money. At least there is nothing in the evidence to show how any demand has ever been made for the restoration of the property by the plaintiff, or by any one in his behalf. The complaint appears to have been framed with a view of recovering as in an action for tort. It first avers a sale and delivery of the goods for cash, payable the *305 day after the delivery, a demand of payment and a refusal. It then avers that the plaintiff was induced to deliver the goods by deceit, trick and device, practiced upon him by the defendant. It sets forth the representations of the defendants, upon which he was induced to deliver the property, which it avers were false and made with'the fraudulent intent to obtain the goods without paying for them, and demands judgment for $535.38, which is the price of the goods, with interest.
The evidence could not sustain this complaint, for it was not shown that the representations were made with a fraudulent intent to obtain the goods without paying for them, but with an intent to pay for them chiefly in the protested paper of the vendor and supposed owner, which, as I have said, is not a conversion. The complaint shows that the possession which the defendants obtained was lawful, as it avers a delivery under an agreement to pay the cash for them upon the following day. It avers a breach of that payment by a refusal to pay cash and the setting up of a pretended claim as an offset against the plaintiff’s bill, but there is no averment that the plaintiff had rescinded the contract or demanded a return of the property, and that the defendant had refused to restore it, which was essential to sustain an action for a wrongful detention, the taking having been lawful.
The only action that was maintainable, therefore, under the complaint, was an action for the sale and delivery of the goods, and as that afflrms the contract of sale, the right of set-off exists unless the defendants knew when they made the contract that the Kenz Hardware Company were the owners, but were acting as factors, or the circumstances were such as should have put them upon inquiry, and there was nothing in the evidence to warrant such a finding. The shears had been manufactured by the company, and the defendants, therefore, having ordered a certain quantity of an article of the company’s manufacture, and the company having in the correspondence that ensued, and in a bill delivered with the *306 goods, acted as principal, the defendants had a right to assume that the company were selling an article of which they were the manufacturers and owners.
The plaintiff having, when advised of the order, sent the shears to the company’s place of business in the city, made them his factors in the sale by delivering the goods into their possession, thereby enabling them to sell and deliver them in their own name. By this he brought .himself within the operation of the rule referred to, for under these circumstances the company cannot be regarded as brokers employed to sell the property, and exceeded their authority by selling it in their own name.
There is nothing in the case to show that the defendants had any intimation that the shears belonged to the plaintiff, or that there was nothing that should have put them upon inquiry, and as they had in their possession at the time of the sale and delivery an indorsed note of the company’s which was past due, they had the right, regarding the company as principals in the transaction, to tender it in part .payment or to set it off in an action brought for the price. There would be no doubt of this if the Benz Hardware Company were the owners of the goods, and it is the same where the company acted as owners and the buyer knew them only as such up to the time when their note was offered tó them- in part payment for the goods.
It may be that the plaintiff had the right to rescind'the sale under the circumstances — a point upon which I express no opinion — and bring an action for a conversion or wrongful detention on the defendants refusing to give up the property upon demand when they were advised of the plaintiff’s ownership, but he made no such demand and can maintain no such action. The action which he has brought is maintainable only as an action for the recovery of the contract-price "which necessarily affirms the sale and entitles the buyers to their set-off. A demand is not required where it is apparent from the conduct of the person who has'the goods that it would be use *307 less; but that does not appear here. All that appears is when the company’s clerk said to one of the defendants something about an arrest, he replied well, go ahead; we are prepared,” which must be understood as applying to the threatened arrest and cannot, as matter of law, be declared sufficient to hold that a demand was necessary.
Upon the review of the facts and the law, it appears that the charge of the judge was erroneous in instructing the jury that if the defendants had knowledge or notice on the day they received the goods, or on the day following, that the property was the plaintiff’s, and that they then had it in their power to return it, that they were liable for the contract price; or, in other words, that they could not set off the note in the action for the price of the goods.
There must, therefore, be a new trial.
Judgment reversed, newtrial ordered, costs to abide the event.
Larremore and Yan Hoesen, J J., concur.