WILLIAM J. BANNERMAN, Respondent, *against* J. E. QUACKENBUSH *et al.,* Appellants.

(Decided March 13th, 1885.)

A father and his son were copartners under a firm name composed of the name of the father with " & Son" added. In the summons and complaint in an action against them as such copartners, their firm name only was given as the defendants in the title of the action. The father alone appeared and answered. *Held,* that plaintiff might properly be allowed, at the trial, to amend the title of the action by striking out the words " & Son," and inserting in lieu thereof the name of the son.

Defendants, desiring to purchase from a certain company goods of its own manufacture, bought a promissory note made by the company, and past due, paying for it an amount much less than the face, intending to use such note in paying for the goods; and after some negotiations as to terms, ordered the goods from the company, promising to pay cash for them in a few days after their delivery. The company had not the goods on hand, having previously sold its stock of them to plaintiff; but he, having been advised of defendants' order, had agreed with the company to fill it and pay the company a commission thereon, but was unwilling to give any time. The company, however, delivered the goods of plaintiff to the defendants, pursuant to their order, with a bill for them in the name of the company. The next day an offer was made by defendants to pay the price to the company, in part by the overdue note of the company held by defendants, and the remainder in cash; which was refused by the company. *Held,* that, plaintiff having enabled the company to sell and deliver the goods to defendants as its own, the company was not to be regarded as a mere broker to sell the goods, but as a factor; and that as defendants did not know, when they made the purchase, that the company was not the owner, and there was nothing to put them upon inquiry, they had the right to regard the company as the principal in the transaction, and they were therefore entitled to set off the note against the price of the goods in an action by plaintiff, in which he did not seek a rescission of the sale, but merely the recovery of the price.

APPEAL from a judgment of the General Term of the Marine Court of the City of New York affirming a judgment of that court entered upon the verdict of a jury and an order denying a motion for a new trial.

The facts are stated in the opinion.

*M. L. Hollister,* for appellants.—The court erred in per-

mitting the amendment at the trial inserting the name of Abraham Quackenbush. He was not named in the summons and complaint as defendant. A supplemental summons was not issued against him, and the court obtained no jurisdiction over him by his presence in the court room (Code Civ. Pro. §§ 451, 452, 453; *Ebbetts* v. *Martine*, 19 Hun 294; *Webster* v. *Bond*, 9 Hun 437; *Town of Hancock* v. *First National Bank of Oxford*, 93 N. Y. 82; *Gardener* v. *Kraft*, 52 How. Pr. 499; *Crandall* v. *Beach*, 7 How. Pr. 271).

The court erred in charging that notice given to the defendants after the delivery of the goods to them would be sufficient to defeat their offset. The delivery was unconditional, and passed the title to defendants, who then became liable on the contract. A notice given subsequently thereto, whether given the next day or the next week, could not affect the rights and equities already accrued (1 Chitty Contr., 11th Am. Ed. 306; *Pratt* v. *Collins*, 20 Hun 126; *Keator* v. *Smith*, 15 Week. Dig. 64). A principal can enforce a contract made by his agent in his own name only subject to the equities existing in favor of the other party to the contract against the agent (*Dunning* v. *Roberts*, 35 Barb. 463; *Elwell* v. *Chamberlin*, 31 N. Y. 611). Suing for the price of the goods is a ratification of the contract of sale as made by the agent (*Morris* v. *Rexford*, 18 N. Y. 552; *Murray* v. *Bininger*, 3 Keyes, 107; *Craig* v. *Ward*, Id. 387; *Moller* v. *Tuska*, 87 N. Y. 166; *Ahern* v. *Goodspeed*, 72 N. Y. 108).

The defendants having no notice or knowledge that the Renz Hardware Company was the agent of or acting in the sale for another, are entitled to offset their claim against the company in this action by its principal for the price of the goods purchased (*Tainter* v. *Prendergast*, 3 Hill 72; *Van Lien* v. *Byrnes*, 1 Hilt. 133; *Hogan* v. *Shorb*, 24 Wend. 458; *Pratt* v. *Collins*, 20 Hun 126; *Wright* v. *Cabot*, 89 N. Y. 570; *Dunning* v. *Roberts*, 35 Barb. 463; Wharton Agency § 465; Story Agency § 390; Benj. Sales, 1st Am. Ed. 643, § 745).

Bannerman *v.* Quackenbush.

*Edgar J. Phillips*, for respondent.—The granting of the amendment was discretionary.   Defendant was not misled. The amendment was in furtherance of justice (*Veeder* v. *Cooley*, 2 Hun 76).   The agreement to pay cash and the refusal after delivery, showed a preconcerted design to obtain possession of the shears without paying for them, and that a fraud was intended (*Kinzey* v. *Leggett*, 71 N. Y. 393).

If the Renz company was plaintiff's factor, the recovery was proper, and if it was merely the agent of plaintiff, the same rules, or rules less favorable to defendants, will apply. The factors' act was passed to aid purchasers, and if the Renz Company was an agent only, the aid given by the factors' act is withdrawn.

Defendants did not pay money in any way, either to the factor or to the original owner of the note, on the faith of the possession by the factor.   The defendants must have advanced money on the faith of the possession by the factor (*First Nat. Bank of Toledo* v. *Shaw*, 61 N. Y. 301; *Howland* v. *Woodruff*, 60 N. Y. 79).   A purchase *without notice* of plaintiff's claim alone, would not protect the defendants.   Something more than a good consideration is necessary to shield them as against the claim of plaintiff.   The consideration must be valuable and actually paid, and without notice.   A transfer of the goods to a *bona fide* creditor of factor or agent in payment of a pre-existing debt does not constitute the creditor a *bona fide* purchaser for a valuable consideration (*Weaver* v. *Barden*, 49 N. Y. 291, 292; *Barnard* v. *Campbell*, 55 N. Y. 463).   Notice of plaintiff's claim after the delivery of the goods was sufficient (*Tourville* v. *Nash*, 3 P. Wm. 306; *Story* v. *Windsor*, 2 Atk. 630; cited and approved in *Weaver* v. *Barden*, 49 N. Y. 291).   The possession of merchandise by a factor requisite to enable the factor to pledge the goods is the actual and not a constructive possession (*Howland* v. *Woodruff*, 60 N. Y. 83).   The fact that the Renz company sent a bill in its own name to defendants does not alter the case.   Defendants were advised of the

true situation.   Even were defendants *bona fide* holders, plaintiff could recover (*Kinzey* v. *Leggett*, 71 N. Y. 395). It is doubtful if defendants were entitled to succeed even had they paid value, the Renz company having neither the possession of the goods nor indicia of ownership (*Barnard* v. *Campbell*, 55 N. Y. 463).

An undisclosed principal may recover from third person proceeds of sale by agent, which at the time of being notified of principal's ownership still remains in his hands (*Wright* v. *Cabot*, 47 N. Y. Super. Ct. 229).

CHARLES P. DALY, Chief Justice.—The court had jurisdiction to allow the words " & Son " to be stricken from the title, and to direct that the name of Abraham Quackenbush be inserted instead.

The action was brought against the defendants as copartners; and where that is the case the Code provides, § 1932, that if the summons is served upon one or more, but not upon all the defendants, the plaintiff may proceed against the defendant or defendants served, unless the court shall otherwise direct; and if he recovers, may take final judgment against all the defendants jointly indebted; upon which judgment, the execution issues in form against all the defendants—§§ 1934, 1935—but is not enforced against a defendant who has not been served with the summons, except that it can be collected out of property jointly owned by him with a defendant who has been served.

The answer in this action is by J. E. Quackenbush, one of the partners, from which it may be assumed that he was the only one served in the action; and the amendment appears to have been made for the purpose of having the name of both partners inserted in the summons and complaint, instead of J. E. Quackenbush & Son, as it was in the summons and complaint; which amendment may be made under § 451; and which, in fact, the court under the Code must, when the true name becomes known, order to be made, upon such notice and such terms as it may prescribe.

The cases to which the counsel for the appellants refer,

are cases where a new defendant is sought to be brought in, merely by an amendment, which can be done only by the service upon him of a supplemental summons; or, in other words, where defendants are attempted to be added without the service of process, by simply amending the pleadings; which cannot be done. Such was not the nature of the amendment here. It did not and could not authorize an individual judgment against Abraham Quackenbush, the judgment in the action being one that could be collected only out of property jointly owned by him and the partner who had been served.

Before passing upon the exception taken to the judge's charge, it will be necessary to consider the case presented by the evidence.

It appeared that the firm of J. E. Quackenbush & Son, who are hardware merchants, had an order from Italy for 300 shears, an article manufactured by the Renz Hardware Company, a manufacturing company at Bridgeport, Connecticut, having an office for the transaction of business in this city. The defendants sent a letter to the company's office, asking at what price they would supply the quantity of shears wanted, payment to be made in ten days. The treasurer of the company, A. Kaufman, replied by a letter giving what he called the company's "bottom prices"; and stating that they did not object to the payment in ten days. This was followed by further correspondence, until finally J. E. Quackenbush & Son sent a letter stating that the company might furnish the shears required at the company's prices; and the company, on January 26th, 1883, delivered the shears at the store of J. E. Quackenbush & Son, with a bill made out in the name of the Renz Hardware Company, in which it is stated that the articles, which are enumerated in the bill, were sold to J. E. Quackenbush & Son, "terms cash, within ten days from date." This is the transaction as it appears by the documentary evidence, that is, the letters between vendor and vendee, and the bill delivered with the goods; and it agrees with the other evidence given by the defendants. But the account of the transaction given by the plaintiff's wit-

ness, Schram, conflicts with this documentary evidence. He testifies that on January 25th, 1883, the day before the goods were delivered, he went to the defendants' store, where he saw Abraham Quackenbush, the son, and told him that the company could not give ten days time; that the defendants could have the shears, but not without cash upon delivery; that Abraham Quackenbush said that they could not do that; that the shears were for export; that he did not want to pay the money before he got it from his customer, and to send the goods to them on Thursday; that they would then send the bill to the office of the company and have it signed, and on Saturday forenoon they would go to their bank and get the money; and that the company might send up about noon on that day and get a check for the amount of the bill. The bill delivered on the following day with the goods, however, states the terms to be cash " within ten days from date; " and whether the terms of the sale were cash on delivery, modified by an understanding that payment might be made the day after the delivery, or the terms were cash within ten days, as stated in the bill of parcels, was a question for the jury. Whatever may have been the fact in this respect, it appears that before making the purchase, Abraham Quackenbush bought for $100, of one W. F. Swords, of Connecticut, a promissory note of the company for $467.51, given by the company to Swords for goods received, and which note when purchased by Quackenbush was past due, and had been protested for non-payment. Quackenbush testified that he bought the note for $100, intending to use it in payment of the bill for the shears, thinking, as he said, that "if he could make any money by it, well and good "; that his object in buying the shears was that " he had a place to put them," and that if he had not " known' where to place them," he would " have bought neither them nor the note."

On the morning after the delivery of the goods, the attorney of the defendants went to the office of the company, and seeing the treasurer, told him that he came to pay the defendants' bill, and offered in payment of it the $467.50

note and the residue of the amount in cash.   The treasurer refused to take the note, said that the goods did not belong to him and that he wanted the cash as had been agreed upon.   The treasurer, as the attorney testified, was very angry ; declared that it was substantially a fraud, and spoke of an arrest, and about an hour after he sent Schram, the clerk, to the defendant with a bill for the shears, made out in the name of the Renz Hardware Company, but having at the end of it a direction to the defendants to pay the amount to the plaintiff.   Schram saw the elder member of the firm of J. E. Quackenbush, and presented the bill to him, who said : " We have made payment in another way before this." Schram said that they knew that, but that they did not want to receive the note in payment of the goods ; that they wanted cash ; stating that the goods belonged to the plaintiff.   Schram said something further about an arrest, to which Quackenbush replied : " Well, go ahead, we are prepared."

These 300 shears formed part of 1000 shears which the plaintiff, about ten months before, had bought of the Renz Hardware Company, who were the manufacturers of them. There was no question in the case as to the integrity of the purchase.   The 1000 shears were delivered to the plaintiff at his place of business in Brooklyn, who gave his checks for them, which checks, it was shown, had been paid. When the Renz Hardware Company received the order for the goods, they inquired of the plaintiff if he had them on hand, advising him of the order they had received, and he replied that he would fill the order and pay the company a commission upon the sale, but that he did not want to give any time.   And it further appeared that the goods were taken from the Renz Hardware Company's office in this city, when they were delivered to the defendants.

Upon this state of facts, the judge charged the jury that, if they found that the plaintiff owned the property, but the defendants had no notice whatever of the fact, but acted in good faith, without knowledge or notice of the plaintiff's title, or of any circumstance calculated to put them upon

inquiry, the jury should allow, as an offset to the plaintiff's claim, the note for $467.51 with interest, and render a verdict for the plaintiff for the balance then remaining; and in concluding his charge, finally instructed the jury as follows: "If the defendant, J. E. Quackenbush, had knowledge, on the day he received the goods or the day following, that the goods belonged to the plaintiff, and not to the Renz Manufacturing Company, he might have said: 'If that be so, the plaintiff may come and take his goods away; I don't want them; I bought them supposing they belonged to the Renz Manufacturing Company, against whom I have an offset.' If, however, the defendant did not see fit to exercise his legal rights, and with knowledge and notice that the property was the plaintiff's, and the defendant had it in his power, at the time, to return the property, he is liable for the contract price;" to which part of the charge the defendant excepted.

It is a well settled rule, that where a factor sells goods as his own, and the buyer, having no knowledge that he is acting as a factor, has a right to assume that he is the owner, such a buyer, in an action brought by the principal for the price, may set off any demand which he has against the factor. In the earliest reported case in which this rule is found, *Rabone* v. *Williams* (7 T. R. 360, note *a*), it is thus broadly stated by Lord MANSFIELD: "Where a factor acting for a principal, but concealing the principal, delivers goods in his own name, the person contracting with him has a right to consider him, to all intents and purposes, as the principal, and though the real principal may appear and bring an action upon that contract against the purchaser of the goods, yet the purchaser may set off any claim he may have against the factor in answer to the demand of the principal."

Paley says that this rule " is built upon the principle that, where the buyer has been led to contract under the impression that his contract is with one person, he cannot afterwards be defrauded of the right which he has against

that person by the introduction of a third, to whom he was a stranger" (Paley on Principal & Agent, by Lloyd, 327).

Story declares that the ground of this doctrine " undoubtedly is that where any person holds himself out as a principal, with the *consent of the owner*, third persons who deal with him *bonâ fide*, are entitled to all the rights which they would have if he were the real principal " (Story on Agency, 2d Am. ed. § 390). And Justice CHAMBERS, in *Houghton* v. *Mathews* (3 Bos. & P. 490), and Chief Justice NELSON in *Mitchel* v. *Bristol* (10 Wend. 495), approve of the reason which is given for the rule in Cullen's Bankrupt Laws, that the parties, by their conduct, having enabled their agent to gain credit, as the sole owner, and the buyer having contracted with him *bonâ fide* in that character, they cannot recover against the buyer without allowing him the same advantages and equities in his defense that he would have had against the agent.

As indicated in the statement of the rule, it does not apply where the buyer knows that the seller is not the owner; or where the circumstances are such as should have put him upon inquiry, especially when the facts might easily have been ascertained, and he must be regarded as negligent in not making the inquiry (*Baring* v. *Corrie*, 2 Barn. & Ald. 137; *Eastcott* v. *Milward*, 7 T. R. 361, note B.; *Young* v. *White*, 7 Beav. 506; *Mitchel* v. *Bristol*, 10 Wend. 495-6; *Hogan* v. *Shorb*, 24 Id. 458); *Bliss* v. *Bliss*, 7 Bosw. 339; *Judson* v. *Stilwell*, 24 How. 513). And in applying the rule, a distinction is recognized between a factor and a broker; because factors have the possession of goods upon which they usually make advances, and having a special property in them, have authority to sell them in their own name ; whereas, the broker has not the possession of the goods, the purchaser is not deceived by that circumstance, and as the employment of a broker gives him no authority to sell the goods as his own, he cannot bind his principal if he does so " (*Baring* v. *Corrie*, 2 Barn. & Ald. 144).

The first question which this case presents is, what was

the effect of the delivery of the goods upon the representa-
tion made to procure the delivery of them, assuming it to
have been made as stated by the plaintiff's witness? This
question arose in *Chapman* v. *Lathrop* (6 Cowen 110),—a
case in many of its features resembling the present one.
In that case the defendant went to the plaintiff's store and
inquired for certain articles; and being informed that the
plaintiff had them, the defendant requested that they might
be put as low as possible, as they would pay for them in
cash; upon which the plaintiff said that if they were to be
paid for in cash, he would sell them as low as he could;
and upon the same day, they were delivered to the defend-
ant, who took them to his store upon carts; and upon the
next day, the defendant's clerk called on the plaintiff and
tendered a protested note indorsed by the plaintiff and
offered to pay the balance in cash. The plaintiff refused
to receive the note, and about a fortnight after demanded
the property, which the defendant refused to deliver.
The plaintiff brought trover, and it was decided that
the action could not be maintained. The court held
that if there was a fair contract for the goods, and they
were delivered to the purchaser without any fraudulent
contrivance on his part to obtain possession, the property
passed, and that the plaintiff's remedy was an action for
the price. Where the agreement, said Chief Justice SAV-
AGE, is to pay down for goods, and the vendor delivers
them without actual payment, the vendee may avail himself
of any legal set-off, notwithstanding that the agreement
was to pay ready money; and there was no fraud, under
the circumstances above stated, in paying the plaintiffs
with their own paper.

In *Hogan* v. *Shorb* (24 Wend. 458), the action was
brought to recover for goods sold. It appeared in this case,
that one Morris, who was an agent of the plaintiff, sold the
goods to the defendant, without disclosing the name of his
principal. The sale was for cash or for payment in from 2
to 6 days, which was deemed a cash sale. Morris, the agent,
had stopped payment 20 days before the sale; a fact that

was notorious; and when the sale was made the defendants held Morris' note for a larger amount than the price of the goods; but which note had not yet matured. Morris called twice upon the defendants for the cash, but was told by them that they were short of funds. About 20 days after the sale he called again, when they told him that they thought that he ought to let the claim go against his note which was then coming due. He replied that he had no right to do so; that the goods were not his; that the owner lived in Baltimore, and that he must get the money. He testified further that he was a commission merchant, which was upon his sign; that if the defendants did not know it, everyone else did; and that he had no doubt that they knew he had stopped payment before the sale; and evidence was given tending to show that the defendants made the purchase with the intent to set off the note instead of paying cash according to the contract.

The court, after a very full review of the decisions under this rule, before stated, from the earliest report of it, in *Rabone* v. *Williams* (*supra*), held that, under the circumstances stated, the offset must be allowed, and the judgment in favor of the plaintiff was reversed.

BRONSON, J., who delivered the opinion of the court, said that it might be an open question whether the vendor, immediately after the delivery, and when he first discovers that the vendee does not intend to abide by his agreement to pay cash, may not disaffirm the sale, and bring trover for the goods, if they still remain in the hands of the vendee; but that, whatever may be the fraud, if the goods are actually delivered in pursuance of a contract of sale, the vendor may elect to affirm it; and that he does affirm it, *if there be any considerable delay in requiring a return of the goods*, after discovery of the fraud; or where, as was done in that case, he brings an action for the price.

The judge held further that the fact that Morris was a commission merchant had little or no tendency to prove notice, because he was also a trader on his own account; that the fact that he had stopped payment proved nothing,

because after the happening of that event, he would be as likely to sell his own goods as he would goods which a third person had previously intrusted to him. That the fact that the defendants intended to set off the note which they held against him, tended to show that they believed that Morris was the principal; for otherwise, they could hardly hope to accomplish their object. That it made no difference that the defendants bought the goods from Morris for the very purpose of obtaining payment of their debt against him; and that, upon the facts stated, the defendants were entitled to a verdict. He said it would not do, in such a case, to guess that the vendee had notice, but that it must appear from the nature of the transaction, or by something that transpired before the contract—or sale—was completed, that the vendee had good reason to believe that he was dealing with an agent; and that, in a commercial community, no rule short of this would afford sufficient protection.

It appears to me that these two decisions cover all the questions that arise upon the facts in this case. The transaction upon the part of the defendants is not, it is true, one that commends itself to the favorable consideration of the court. The offset was not one arising out of any transaction between the defendants and the Renz Hardware Company, but the defendants, after they had obtained an order for a certain quantity of an article which that company manufactured, and from whom they meant to purchase it, went and bought the depreciated paper of the company, at the enormous discount of 79 per cent., that they might make $367 out of an order for goods for which they were to pay but $522; and when ascertaining, according to plaintiff's witness, that the company would not, at the price agreed upon, give any time, but wanted, as the witness expressed it, " spot cash payment upon delivery," the defendants, to secure a delivery, practiced the artifice of representing that they did not want to pay cash until their customer had paid them, coupled with the promise that when the bill of lading, as I understand the testimony, was signed, they would give the company their check for the amount of the bill. But,

notwithstanding these circumstances, I think, upon the authorities, that if the defendants had the right to assume, when they made the contract for the purchase of the goods, that the company were the owners of them, they had the right, in this action, to set off the note as a valid demand which they had against the company.

It was distinctly held, as has been stated, in *Hogan* v. *Shorb* (*supra*), that although the buyer, when he agreed to pay cash, intended to pay for the goods with the note that he held, of the factor, that would not affect his right to set it off in the action brought by the principal for the price of the goods, the note being then due; and that this is the law, appears also by the cases of *Eland* v. *Karr* (1 East 375); *Comforth* v. *Rivett* (2 Maule & Sel. 510); *Lehmere* v. *Hawkins* (2 Esp. N. P. 626); *Downer* v. *Eggleston* (15 Wend. 51); for a set-off is a legal right, and may be insisted upon, even where an express promise has been made to relinquish it (*Downer* v. *Eggleston, supra; Taylor* v. *Okey*, 13 Ves. 180).

One of the early cases in which a set-off of the vendor's paper in an action brought for the price of the goods was not allowed, *Fair* v. *McIver* (16 East 130), resembled the present case, in the feature that the paper of the vendor was obtained for the purpose of using it in payment for the goods bought; but the case is distinguishable from the present one, in the circumstance that the purchaser there was not the *bonâ fide* owner of the bill of exchange which was offered to the acceptor in payment for the goods bought, but was acting for the benefit of the real owners, one of whom, knowing that the vendor had not been regular in his payments, informed the defendant who made the purchase, that he was in doubt as to the acceptor's affairs; and upon his solicitation and suggestion the defendants undertook to secure the payment of the bill, by purchasing goods of the acceptor, and after the delivery of them, offering the bill in payment, which he refused to take. The acceptor shortly afterwards failed; and in an action brought by his assignees against the defendants to recover for the price of the goods, it was held that the defendants could not set off the bill

against the acceptor's assignees, as they were not the holders of it in their own right; but merely held it as trustees of the real owners. "As such trustees," said BAYLEY, J., "they could not set it off against a demand upon them in their own right."

Lord ELLENBOROUGH went beyond this, declaring that he was not satisfied with the previous decision of Lord KENYON in *Eland* v. *Karr* (1 East 375); that upon the sale of goods for ready money the condition is performed by offering in payment the vendor's own paper; but in subsequent cases, his view was not concurred in, but that of Lord KENYON was held to be the law; see the cases in Hilliard Sales 3d Ed. 239. Where the agreement is to pay cash, there is no reason why the vendor should refuse to receive his own paper, if it is due, as equivalent to cash; and it has been so held *(Mayer* v. *Nias*, 8 Moore 275; 1 Bing. 311). There is not, in such a case, that fraud which exists where a contract is made for the purchase of goods for cash, and possession of them is obtained with a preconceived intention not to pay for them. What appears in the present case is that, upon a sale of goods for cash, a delivery of them was obtained with a preconceived intention to pay for them in the depreciated paper of the vendor which had been bought for that purpose; and that does not amount to a conversion *(Mayer* v. *Nias*, 8 Moore 275; 1 Bing. 311; *Kennett* v. *Robinson*, 2 J. J. Marsh. [Ky.] 84; Hilliard Sales 3d Lond. Ed. 309, 405; Wells Replevin 349, 551); for the goods being delivered upon a promise to pay the cash upon the Saturday following, the possession, in the first instance, was lawful, and if the plaintiff, being the owner of the goods, as he had authorized the sale of them only for cash, was entitled to a restoration of them on the breach of that condition, then a demand of them of the defendants and a refusal on their part to give them up, were necessary before an action could be maintained for a conversion, or more properly, for the wrongful detention of the goods *(Hall* v. *Robinson*, 2 N. Y. 295; *Addison on Torts* 3d. Ed. 312). But there has been no demand for the restoration of the goods, but a de-

mand only, as in *Chapman* v. *Lathrop* (*supra*), for the purchase money; at least there is nothing in the evidence to show that any demand has ever been made for the restoration of the property by the plaintiff or by any one on his behalf.

The complaint appears to have been framed with a view of recovering as in an action for a tort. It first avers a sale and delivery of the goods for cash, payable the day after the delivery; a demand of payment, and a refusal. It then avers that the plaintiff was induced to deliver the goods, by deceit, trick and device practiced upon him by the defendants. It sets forth the representations of the defendants, upon which he was induced to deliver the property, which, it avers, were false and made with the fraudulent intent to obtain the goods without paying for them, and demands judgment for $535 $\frac{38}{100}$, which is the price of the goods with interest.

The evidence did not sustain this complaint; for it was not shown that the representations were made with a fraudulent intent to obtain the goods without paying for them, but with an intent to pay for them chiefly in the protested paper of the vendor and supposed owner, which, as I have said, is not a conversion. The complaint shows that the possession which the defendants obtained was lawful, as it avers delivery under an agreement to pay the cash for them upon the following day. It avers a breach of that payment by a refusal to pay cash, and the setting up of a pretended claim as an offset against the plaintiff's bill; but there is no averment that the plaintiff had rescinded the contract or demanded a return of the property, and that the defendants had refused to restore it, which was essential to sustain an action for a wrongful detention, the taking having been lawful. The only action that was maintainable, therefore, under the complaint, was an action for the sale and delivery of the goods, and as that affirms the contract of sale, the right of set-off exists, unless the defendants knew, when they made the contract, that the Renz Hardware Company were not the owners but were acting as factors or the circumstan-

ces were such as should have put them upon inquiry; and there was nothing in the evidence to warrant such a finding. The shears had been manufactured by the company, and the defendants, therefore, having ordered a certain quantity of an article of the company's manufacture, and the company having, in the correspondence that ensued and in a bill delivered with the goods, acted as principals, the defendants had a right to assume that the company was selling an article of which they were the manufacturers and owners. The plaintiff having, when advised of the order, sent the shears to the company's place of business in this city, made them his factors in the sale, by delivering the goods into their possession, thereby enabling them to sell and to deliver them in their own name. By this he brought himself within the operation of the rule referred to, for under these circumstances the company cannot be regarded as brokers employed to sell the property, and having exceeded their authority by selling it in their own name.

There is nothing in the case to show that the defendants had any intimation that the shears belonged to the plaintiff, or that there was anything that should have put them upon inquiry; and as they had in their possession, at the time of the sale and delivery, an indorsed note of the company which was past due, they had the right, regarding the company as principals in the transaction, to tender it in part payment, or to set it off in an action brought for the price. There would be no doubt of this, if the Renz Hardware Company were the owners of the goods; and it is the same where the company acted as owners, and the buyers knew them only as such up to the time when their note was offered to them in part payment for the goods. It may be that the plaintiff had the right to rescind the sale under the circumstances—a point upon which I express no opinion—and bring an action for a conversion or wrongful detention, on the defendants refusing to give up the property upon demand, when they were advised of the plaintiff's ownership. But he has made no such demand and can maintain no such action. The action which he has brought is maintainable

only as an action for the recovery of the contract price, which necessarily affirms the sale, and entitles the buyers to their set-off. A demand is not required where it is apparent from the conduct of the person who has the goods that it would be useless, but that does not appear here. All that appears is, that when the company's clerk said to one of the defendants something about an arrest, he replied: "Well, go ahead, we are prepared,"—which must be understood as applying to the threatened arrest, and cannot, as matter of law, be declared sufficient to hold that a demand was unnecessary.

Upon this review of the facts and the law, it appears that the charge of the judge was erroneous in instructing the jury that, if the defendants had knowledge or notice, on the day they received the goods or on the day following, that the property was the plaintiff's, and that they then had it in their power to return it, that they were liable for the contract price; or, in other words, that they could not set off the note in the action for the price of the goods.

There must, therefore, if my colleagues concur, be a new trial.

LARREMORE and VAN HOESEN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.